**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LIZA M. KRANZ, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; | § § § | SA-18-CV-00169-XR |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| MIDLAND CREDIT MANAGEMENT, INC., A KANSAS CORPORATION; ASSET ACCEPTANCE, LLC, A DELAWARE LIMITED LIABILITY COMPANY; ENCORE CAPITAL GROUP, INC., A DELAWARE CORPORATION; AND JOHN AND JANE DOES 1-100, | § | |
| *Defendants*. | | |

## ORDER

On this date, the Court considered Defendants' motion for judgment on the pleadings. Docket no. 80. After careful consideration, the Court issues the following Order.

## BACKGROUND

In December 2013, Defendants Midland Credit Management, Inc. ("Midland"), Asset Acceptance, L.L.C. ("Asset"), and Encore Capital Group, Inc. ("Encore") obtained a judgment on a consumer debt against Plaintiff Liza M. Kranz ("Plaintiff"). Docket no. 1 ¶ 45. This case arises out of the actions allegedly taken by the Defendants to collect on that debt. Based on the conduct described herein, Plaintiff brought suit under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Texas Debt Collection Practices Act ("TDCA"), TEX. FIN. CODE § 392.001 *et seq.*

On October 12, 2017, Defendants mailed Plaintiff a "Subpoena Letter." *Id*. ¶ 47; *see* docket no. 1-1 (titled "SUBPOENA FOR ORAL DEPOSITION AS AID TO ENFORCEMENT OF

1

EXECUTION"). That Letter purported to be a court record and commanded Plaintiff to appear for an oral deposition under the power and authority of the State of Texas. Docket no. 1 ¶¶ 56–57. The Letter warned Plaintiff that if she failed to "obey," she "may be deemed in contempt" by a Texas court and "may be punished by fine or confinement or both." *Id.* ¶ 58. Plaintiff asserts that these statements were false because the subpoenas were, in fact, legally unenforceable. *Id.* ¶ 68. The Subpoena Letter stated that it was addressed "TO: Any Sheriff or constable of the State of Texas or other person authorized to serve and execute subpoenas as provided in Texas Rule of Civil Procedure 176.4 . . . You are commanded to summon [Plaintiff]." *Id.* ¶ 61. However, Defendants never requested a sheriff, constable, or any other authorized person to serve the Subpoena Letters on Plaintiff. *Id.* ¶ 62. Thus, Plaintiff argues she was never served with the Subpoena Letter in a manner authorized by Texas law. *Id.* ¶ 67.

The same Subpoena Letter was sent to Jeffrey Taggatz, another Texas consumer and a former plaintiff in this action. *Id.* ¶ 49; *see* docket no. 1-2. Consequently, Plaintiff alleges that the Defendants created the Subpoena Letters by merging information specific to a debt with a template, docket no. 1 ¶¶ 53–54; that the Defendants mailed the Subpoena Letters to her and hundreds of Texas consumers from Troy, Michigan using the United States Postal Service's first-class bulk rate mail, *id.* ¶ 55; and that the Subpoena Letters were drafted, authorized, prepared, and sent by non-attorney debt collectors with no meaningful attorney involvement, *id.* ¶ 70. Plaintiff argues that the Subpoena Letters are false, deceptive, and misleading to the "least sophisticated consumer" because they falsely appear to be valid court documents issued by an officer of the Texas courts. *Id.* ¶ 69.

About two weeks after Plaintiff and Jeffrey Taggatz received these Subpoena Letters, Defendants sent another collection letter. *Id.* ¶ 77–78; *see* docket nos. 1-3, 1-4 ("Follow-up

Letters"). Plaintiff claims that these Follow-up Letters falsely implied that the original Subpoena Letters had the legal force of a proper subpoena. Docket no. 1 ¶ 84; *see also* docket no. 1-4 at 1 ("We recently sent you a subpoena which requires you to appear in-person to provide your sworn testimony at a deposition . . . ."). As with the initial Subpoena Letters, Plaintiff alleges that the letters were prepared and sent by non-attorney debt collectors with no meaningful attorney review or involvement. Docket no. 1 ¶ 82.

Accompanying each Follow-up Letter was a Financial Disclosure Form. *Id*. ¶ 87. Through this Form, Defendants sought to obtain personal, financial, and other information from Plaintiff to aid their efforts to collect her debt. *Id*. ¶ 88. The Follow-up Letters advised Plaintiff that she could avoid attending her oral deposition if she instead completed the Financial Disclosure Form. *Id*. ¶ 87. However, Plaintiff argues that this Form is not a permissible form of post-judgment discovery in Texas. *Id*. ¶ 89.

Defendants rented office space in San Antonio for the date and location specified in the Subpoena Letters. *Id*. ¶ 91. Plaintiff alleges that at each deposition one or more lawyers[1] handed the would-be deponent the same Financial Disclosure Form with instructions to complete it. *Id*. ¶ 95. No court reporter was present, no depositions were taken, and none of the consumers were permitted to provide sworn testimony. *Id*. ¶ 93. As a result, many "frightened consumers" entered into payment agreements with the Defendants. *Id*. ¶ 96. Plaintiff, however, did not appear; she alleges that "Defendants took no action to enforce their threat of pursuing 'contempt' by a Texas court or obtaining 'punish[ment] by fines or confinement'" against her or any other Letter recipient who failed to appear for their "deposition." *Id*. ¶ 98.

---

[1] Six attorneys licensed to practice in the State of Texas were previously defendants in this case. On March 20, 2020, the parties filed a stipulation of dismissal as to these defendants. Docket no. 74. They will be referred to collectively as "Lawyer Defendants" in this Order.

On February 1, 2018, Plaintiff was served an "Application for Appointment of Receiver After Judgment" which sought turnover relief. *Id.* ¶ 99; *see* docket no. 1-5 ("Turnover Motion"). The Motion explains that Defendants had made a "good faith effort to collect the judgment" but had been unsuccessful. Specifically, the Motion references post-judgment discovery requests to discover the nature and extent of Plaintiff's assets, as well as unsuccessful attempts to contact her. *Id.* at 4.[2] An attached affidavit explains those efforts, though it does not reference the Subpoena Letter or the Follow-up Letter. *See id.* at 6. Instead, it describes Defendants as having "mailed post-judgment discovery to [Plaintiff] by regular first class mail to determine if [Plaintiff] possesses any property subject to execution sufficient to satisfy the judgment. [Plaintiff] was advised to respond to discovery within 30 days of its receipt." *Id.* Plaintiff alleges that "Defendants had no legal basis to obtain the relief sought in their Turnover Motion" and that Defendants have used the same template "as leverage against Texas consumers to collect debts and successfully coerce payments from Texas consumers by threatening to obtain relief from Texas courts to which Defendants are not legally entitled." Docket no. 1 ¶¶ 103, 105. Further, Plaintiff alleges that the Motion falsely stated that Defendants had "good faith to believe Kranz owned 'non-exempt property rights to present and future property, such as bank accounts or real property.'" *Id.* ¶ 102.

A hearing was set for the Turnover Motion on February 16, 2018. *Id.* ¶ 107. Plaintiff alleges that Defendants neither appeared nor had the intention of appearing for the hearing, which she attended with counsel. *Id.* ¶¶ 106–107. At that hearing, the judge denied the Turnover Motion. *Id.* ¶ 108; *see also* docket no. 1-6 ("Order Denying Plaintiff's Application for Appointment of

---

[2] Plaintiff's Complaint does not allege this separate discovery request; however, attached to the Turnover Motion is a letter sent by Midland to Plaintiff on August 3, 2016, over a year before Plaintiff alleges that the Subpoena Letter was sent to her. The letter includes the Financial Disclosure Form and says that if Plaintiff does not provide the requested form within 30 days, "we may issue a subpoena" that "would require you to make a personal appearance to testify to the questions outlined in the form." Docket no. 1-5 at 7.

Receiver After Judgment"). Plaintiff alleges that the presiding judge similarly denied the same

Turnover Motions filed against other Texas consumers. Docket no. 1 ¶ 109.

In total, Plaintiff brings thirteen claims under the FDCPA ("Count One"), fourteen claims

under the TDCA ("Count Two"), and a tort claim for unreasonable debt collection ("Count

Three"). *Id.* ¶¶ 120–148. Plaintiff alleges that there are at least 600 members of the class, *id.* ¶

118.01, defined as:

> Each natural person to whom any Defendant mailed a letter or notice
> to a Texas address during the Class Period which either: (1)
> appeared to compel the addressee's appearance at a deposition under
> threat of contempt for failure to appear including, but not limited to,
> letters substantially the same as Exhibits 1, 2, 3, or 4 to the
> Complaint [the Subpoena and Follow-up Letters]; or (2) sought an
> Application for Appointment of Receiver After Judgment
> substantially the same as Exhibit 5 [the Turnover Motion].

*Id.* ¶ 114.

Plaintiff alleges that she "ha[s] incurred actual damages in the form of unnecessary expense

and time, and [has] suffered emotion [sic] distress and upset" because of Defendants' Letters. *Id.*

¶ 112. Plaintiff also alleges she incurred additional damages due to the Turnover Motion, including

the expense of attending the hearing. *Id.* ¶ 111. Defendants filed the instant Motion for Judgment

on the Pleadings on April 4, 2020. Docket no. 79. Plaintiff filed a response in opposition (docket

no. 93), and Defendants filed a reply (docket no. 95).

## DISCUSSION

### I.    Standard of Review

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

Judgment on the pleadings is only appropriate when "the material facts are not in dispute and a

judgment on the merits can be rendered by looking to the substance of the pleadings and any

judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2009). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* In considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

## II.   Application

Plaintiff alleges thirteen violations of the FDCPA, fourteen violations of the TDCA, and a violation of the common law tort of unreasonable debt collection. Defendants argue that this Court should dismiss Plaintiff's Complaint as to the FDCPA and TDCA for three reasons: (1) The use of an improper method of service of a subpoena is not valid grounds for claims of violations of the

FDCPA and TDCA; (2) the Financial Disclosure Form is a proper post-judgment discovery mechanism and cannot form the basis of the Plaintiff's claims; and (3) the Affidavit attached to the Turnover Motion is not misleading. *See* Docket no. 79. Defendants also argue that the use of post-judgment discovery does not constitute unreasonable debt collection, that Plaintiff fails to state a claim for lack of meaningful attorney involvement, and that Defendants Asset and Encore are neither directly nor vicariously liable for the conduct described in Plaintiff's Complaint. *See id.*; *see also* Docket no. 80 at 22–24.

A. <u>Plaintiff's FDCPA and TDCA Claims are Not Precluded as a Matter of Law.</u>

After carefully examining each of the Defendants' arguments that Plaintiff's claims are precluded as a matter of law, the Court finds that neither state nor federal law categorically preclude the types of claims that Plaintiff brings.

1. *Plaintiff alleges violations of her substantive rights, not merely violations of state procedural law.*

First, Defendants argue that a procedural defect in the manner of service of the Subpoena Letters does not violate the FDCPA and TDCA.  According to Defendants, one cannot "bootstrap FDCPA and TDCA claims to alleged violations of state procedural requirements." Docket no. 80 at 12. In support of their argument, Defendants cite *Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015), and *Drennan v. First Resolution Inv. Corp*, 389 F. App'x 352, 352–53 (5th Cir. 2010). Docket no. 80 at 6–7. In *Rucker*, the Court of Appeals held that the defendant did not violate the TDCA by threatening to foreclose despite not providing the statutorily required notice of acceleration. 806 F.3d at 831–33. In *Drennan*, the Court of Appeals held the defendant did not violate the FDCPA by filing an improper "suit on account." 389 F. App'x at 352–53. Like the claims in those cases, Defendants assert "Plaintiff's FDCPA claims arising from the Subpoena are

predicated entirely on the alleged non-compliance with the Texas Rules of Civil Procedure." Docket no. 80 at 14.

Plaintiff responds that her claims "do not arise from the issuance of a post-judgment subpoena or from mailing it to her bulk rate from Michigan. Rather, the representations contained in the subpoena and the follow up letter falsely threatened Ms. Kranz with contempt, a fine, and jail." Docket no. 93 at 9. That is, the Subpoena Letters were unenforceable, and therefore the statements contained therein were false and misleading. Specifically, Plaintiff argues that the statements that Plaintiff's "failure 'to appear and give testimony' for an 'oral deposition' (that would never occur) would result in 'fine or confinement or both'—were false and misleading." *Id.* (citing Docket no. 1 ¶¶ 61–62, 68, 129.01). Plaintiff also alleges that the Subpoena Letters contain the false statement that each is addressed " "TO: Any Sheriff or constable of the State of Texas or other person authorized to serve and execute subpoenas" when Defendants never requested that any such individual execute the Letters. Docket no. 1 ¶¶ 61–62.

Defendants made a similar argument in their Rule 12(b)(1) Motion to Dismiss. *See* Docket no. 86. There, the Defendants argued that the Plaintiff's allegation of a procedural violation did not result in the type of harm that the debt collection laws were meant to prevent, and thus the Plaintiff did not have standing to bring suit. *See* docket no. 87 at 13. Having weighed that argument in the legal context of a challenge to standing, this Court ruled that Plaintiff had alleged a substantive claim under the FDCPA that was not based solely on a violation of a state procedural rule. *See* Docket 92 at 9–11.

So too here. The Court finds that Plaintiff's claims, insofar as they relate to the Subpoena Letters, are not based solely on a violation of state procedural law. Plaintiff alleges not that the Defendants violated the FDCPA and TDCA by violating state procedural law, but that the

Defendants' false statements contained within the Subpoena Letters constituted "false, deceptive, or misleading representation[s] or means in connection with the collection of [Plaintiff's] debt." 15 U.S.C. § 1692e; *see also* Docket no. 1 ¶¶ 4, 6, 120–140.14. Defendants' reliance on *Rucker* is inapposite because that case did not involve the use of allegedly false, deceptive, or misleading representations or means. *Drennan* likewise does not control because the case does not stand for the proposition that any alleged false statement made in a legal document is not actionable under the FDCPA.

Defendants' argument that "violating state law does not create a per se violation of the FDCPA just because the violation is related to the collection of a debt" fails for the same reason. *See* Docket no. 80 at 15. The Court does not dispute the reasonable principle that a violation of a procedural law does not necessarily constitute a violation of the FDCPA or TDCA. However, the FDCPA creates substantive rights that, if violated, confer upon consumers a remedy at law. *Cf. Guerrero v. GC Servs. Ltd. P'ship*, No. CV 15-7449, 2017 WL 1133358, at *10 (E.D.N.Y. Mar. 23, 2017) ("[T]he majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that, unlike the FCRA section at issue in *Spokeo*, which contains only procedural requirements, the FDCPA creates a *substantive right*, the violation of which would itself give rise to a concrete injury.") Plaintiff has alleged violations of her substantive rights under the FDCPA. A claim that Defendants made false or misleading representations within the Subpoena Letters is cognizable under that law.

Defendants next argue that Plaintiff's claims fail because courts can enforce procedurally defective subpoenas and that Plaintiff chose not to object to defective service of process—in other words, "[i]f defectively served subpoenas *may* be enforced, it necessarily follows that a warning regarding enforcement cannot be false." Docket no. 80 at 10–12. (emphasis in original). Even if

this were true, the allegedly false statements within the Subpoena Letters regarding their enforceability—i.e., that the Plaintiff "may be deemed in contempt" and "may be punished by fine or confinement or both"—are not the sole bases of Plaintiff's FDCPA and TDCA claims. *See* Docket no. 1-1. Plaintiff also alleges: that the Subpoena Letters commanded her to appear for a deposition, docket no. 1 ¶ 57; that the Subpoena Letters contained the language required under Texas law to compel an individual's attendance at a deposition, *id.* ¶ 64; that Defendants never intended to require Plaintiff to provide deposition testimony, *id.* ¶ 86; that Defendants scheduled the depositions of "hundreds of other Texas consumers to take place on the same dates, times, and location set forth in the Subpoena Letters," *id.* ¶ 92; that at the location and on the dates of the depositions, no court reporter was present, no depositions were taken, and none of the targets of the Subpoena Letters were permitted to provide deposition testimony, *id.*¶ 93(a)–(d); and that Defendants never intended to conduct any of the scheduled depositions, *id.* ¶ 94. In short, Plaintiff alleges that the Defendants falsely represented in the Subpoena Letters their intention to take Plaintiff's oral deposition.

Further, Plaintiff's claims do not rest solely on the statements contained in the Subpoena Letters. Plaintiff also alleges that about two weeks after sending the Subpoena Letters, Defendants mailed the Follow-Up Letter. *Id.* ¶ 77. She asserts that the Follow-up Letters falsely imply that the Subpoena Letters are enforceable, *id.* ¶ 83, and that she is required to provide sworn testimony at a deposition as set in the Subpoena Letters, *id.* ¶ 84. These Letters are clearly not subpoenas and do not contain statements required by Texas law. The Defendants' affirmative statements contained within the Follow-up Letters, if proven false as alleged, may constitute "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

1692e. Notably, Defendants do not appear to argue that the statements contained within the Follow-up Letters are not valid grounds for Plaintiff's claims.

   2. *Defendants' use of the Financial Disclosure Form may constitute a "false representation or deceptive means" in violation of FDCPA.*

Next, Defendants argue that the Financial Disclosure Form that accompanied the Follow-up Letters is proper post-judgment discovery that cannot be grounds for an FDCPA violation. They assert that the Financial Disclosure Form is a set of "post-judgment interrogatories" intended to give Plaintiff the opportunity to provide written information in lieu of a deposition. Docket no. 80 at 20. Plaintiff responds that it is of no import whether the Form constitutes valid post-judgment interrogatories. Docket no. 93 at 13. Instead, liability arises from "the improper means and purpose for which Defendants deployed the Form." *Id.* That is, she argues that the Form was the object of Defendants' efforts to deceive Texas consumers into believing they were compelled by a subpoena to appear at an oral deposition. Plaintiff's Complaint alleges that Defendants sent Texas consumers the Subpoena Letters to compel attendance at a deposition, sent the Follow-up Letters to offer consumers the opportunity to avoid the deposition by filing out the Financial Disclosure Form, and ordered those who appeared for the depositions to complete the Form, all with no intention of taking an oral deposition. Docket no. 1 ¶¶ 47–95. Defendants reply that "nothing in the FDCPA or TDCA precludes obtaining information from consumers in furtherance of enforcing and collecting on a judgment." Docket no. 95 at 10. However, the FDCPA prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Plaintiff alleges a violation of that provision. *See* Docket no. 1 ¶ 129.10.

*3. Plaintiff adequately alleges the Affidavit is misleading in violation of FDCPA.*

Finally, Defendants argue that the Affidavit attached to the Turnover Motion is not misleading because "a creditor may form a reasonable belief that a debtor owns non-exempt assets because 'virtually everyone has a bank account or other non-exempt asset.'" Docket no. 80 at 21 (citing *Airborne Freight Corp. v. Remote Control Hobbies, LLC.*, 2012 Tex. Cnty. LEXIS 1996 *2 (Harris County Dec. 4, 2012); *Tanner v. McCarthy*, 274 S.W.3d 311, 321 (Tex.App.—Houston [1st Dist.] 2008, no pet.)). Defendants are correct in pointing out that "section 31.002 does not require that a judgment creditor seeking a turnover order identify all, or even any, of the judgment debtor's assets that are to be the subject of the turnover order." *Tanner*, 274 S.W. 3d at 321. But Defendant Asset still made an affirmative statement that it had a "good faith reason to believe that [Plaintiff] owns non-exempt property rights to present and future property, such as bank accounts or real property." Docket no. 1-5. Plaintiff alleges that this statement is false and the product of a mass-produced template. Docket no. 1 ¶¶ 101–102. Plaintiff further alleges that this Affidavit is used as part of a scheme to coerce the payment of consumer debts "by threatening relief from Texas courts to which Defendants are not legally entitled." *Id.* ¶ 105. Such a claim is cognizable under the FDCPA. *See e.g.*, 15 U.S.C. §§ 1692e(5), 1692f.

B. Plaintiff Has Properly Alleged Violations of the FDCPA and TDCA.

The Court now turns to whether the Plaintiff has, indeed, properly alleged violations of the FDCPA and TDCA to survive a motion to dismiss. "To prevail on an FDCPA claim, Plaintiff must prove (1) she has been the object of collection activity arising from a consumer debt, (2) Defendant is a debt collector defined by the FDCPA, and (3) Defendant engaged in an act or omission prohibited by the FDCPA." *Meyer v. Christus Health*, Civil Action No. SA–17–CV–213–XR, 2017 WL 4295233, at *3 (W.D. Tex. Sept. 27, 2017). "The conduct prohibited under the TDCA

is coextensive with that prohibited under the FDCPA, at least insofar as '[t]he same actions that are unlawful under the FDCPA are also unlawful under the TDCA.'" *Gomez v. Niemann & Heyer, L.L.P.*, 1:16-CV-119 RP, 2016 WL 3562148, at *6 (W.D. Tex. June 24, 2016).

Plaintiff alleges in her Complaint that she has been the object of collection activity arising from a consumer debt. Docket no. 1 ¶¶ 45, 47, 52, 122–125. Plaintiff further alleges that Defendants are debt collectors as defined by the FDCPA. *Id*. ¶¶ 38–43, 121. Defendants do not dispute either allegation. Thus, the issue to be decided is whether Plaintiff properly alleges that the Defendants engaged in an act or omission prohibited by the FDCPA.

"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). The Court "must evaluate any potential [violation] . . . under an unsophisticated or least sophisticated consumer standard." *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (citing *Goswami v. Am. Collections Enter., Inc.,* 377 F.3d 488, 495 (5th Cir. 2004)). "This standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained, and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)).

The primary thrust of Plaintiff's Complaint is that Defendants violated 15 U.S.C. § 1692e. A debt collector violates that section of the FDCPA if it "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e also provides a non-exhaustive list of conduct that is specifically prohibited. Plaintiff further alleges that Defendants violated Section 1692d, which prohibits conduct that has the "natural

13

consequence" of harassing, oppressing, or abusing the debtor, and Section 1692f, which prohibits the use of unfair or unconscionable means in attempting to collect a debt.

In her Complaint, Plaintiff describes the following scheme: Defendants mass-produced and mailed to hundreds of Texas consumers unenforceable subpoenas that contain false assertions regarding the threat of fines and imprisonment. Docket no. 1 ¶¶ 47–76. Defendants also sent Follow-up Letters, which also contained false assertions regarding the enforceability of the Subpoena and were accompanied by the Financial Disclosure Form. *Id.* ¶¶ 77–90. The Follow-up Letters indicated that Plaintiff could avoid the hassle of an in-person deposition by completing and returning the Financial Disclosure Form. *Id.* Defendants scheduled the oral depositions of hundreds of Texas consumers to take place on the same dates, times, and location set forth in the Subpoena Letters. *Id.* ¶ 92. At these locations no court reporter was present, no depositions were taken, no Texas consumer was permitted to provide oral testimony, and the consumers who appeared were instructed to complete the same Financial Disclosure Form. *Id.* ¶¶ 93, 95. Based on the foregoing, the Defendants never intended to conduct the scheduled depositions. *Id.* ¶ 94. Months later, Defendants served Plaintiff with an Application for Appointment of Receiver After Judgment, which was accompanied by an Affidavit containing an additional false statement. *Id.* ¶¶ 99, 102. Despite having numerous hearings scheduled for the same date and in the same court, Defendants did not appear and had no intention of appearing for the hearing on that motion or other similar motions filed against Texas consumers. *Id.* ¶¶ 106–107, 110.

As discussed above, Defendants argue that the Subpoena Letters at most constitute violations of state procedural law that do not amount to violations of the FDCA or TDCA, that the Financial Disclosure Form is proper post-judgment discovery, and that the Affidavit attached to the Turnover Motion is not misleading. Docket no. 80 at 12–21. But taking the Plaintiff's

allegations as true and viewing them in the light most favorable to her, as this Court must, *Erickson*, 551 U.S. at 94, the Court finds that Plaintiff has properly plead claims for violations of Section 1962f. It is reasonable to conclude that the least sophisticated or unsophisticated consumer would take the Defendants at their word and believe that they are required to submit to an oral deposition. Not understanding that the Defendants had no intention to take their deposition, the consumer would incur the cost of missing work and traveling to the site of the deposition only to be instructed to complete the Financial Disclosure Form with an agent of Defendants watching their every pen stroke. If they were later hailed into court to respond to the Defendants' Turnover Motion, they would again incur the cost of missing work, and potentially retaining counsel, only to find that the Defendants had no intention of following through with the motion. Plaintiff has properly plead that defendants used "unfair or unconscionable means to collect or attempt to collect [a] debt." 15 U.S.C. § 1962f.

The Court further finds that Plaintiffs properly alleged that Defendants used "false, deceptive, or misleading representation or means" in furtherance of their debt collection activities. *Id.* § 1692e. Plaintiff alleges that the Subpoena Letters falsely state (1) that they were addressed to a sheriff, constable, or other person authorized to serve subpoenas, and (2) that the recipients were subject to criminal penalties for failure to appear for the deposition when the subpoena was unenforceable. Docket no. 1 ¶¶ 59–61. Defendants argue that because courts can enforce procedurally defective subpoenas, "it necessarily follows that a warning regarding enforcement cannot be false – meaning that Plaintiff's claims must fail." Docket no. 80 at 10–11 (emphasis in original). But even if these statements are not necessarily false, Plaintiffs have sufficiently alleged that the Defendants used deceptive means to coerce Texas consumers to appear at a deposition they never intended to take. *See* Docket no. 1 ¶¶ 92–95. Further, Plaintiffs allege that the Follow-

up Letters contain false statements that Texas consumers are required to appear for a deposition when the Defendants never had any intention of taking their depositions. *Id.* ¶¶ 83–86, 92–95. "A single violation of any provision of the Act is sufficient to establish civil liability under the FDCPA." *Taylor*, 103 F.3d at 1238. Accordingly, Plaintiffs' claim survives even if the statements contained in the Subpoena Letters are arguably not false.

Finally, the Court finds that Plaintiff has not alleged sufficient facts to support her claim that Defendants engaged in conduct the "natural consequence of which is to harass, oppress, or abuse." 15 U.S.C. § 1692d. Simply put, the alleged conduct is not of a type with the inexhaustive list provided by that section. The statute specifically prohibits the threat of violence, § 1962d(1), the use of obscene language, § 1962d(2), the publication of a list of debtors, § 1962d(3), the threat of sale, § 1962d(4), and harassing telephone calls, §§ 1962d(5)–(6). The conduct Plaintiff alleges does not rise to the level of harassment, oppression, or abuse contemplated by the statute. *See Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 394 (D. Del. 1991) ("Subsection 1692d prohibits only oppressive and outrageous conduct. It is not intended to shield even the least sophisticated recipients of debt collection activities from the inconvenience and embarrassment that are natural consequences of debt collection.") (internal citation omitted).

In sum, the Court holds that Plaintiff has properly alleged violations of 15 U.S.C. §§ 1962e and 1962f. Plaintiff has not sufficiently alleged facts to constitute a violation of 15 U.S.C. § 1692d, and that claim is DISMISSED. The Defendants have not argued, and the Court has not found in its own review, that Plaintiff's TDCA claims involve allegations of harassing, oppressive, or abusive conduct. Accordingly, Plaintiff's TDCA claims survive insofar as they arise out of conduct that is prohibited by the FDCPA. *See Gomez*, 2016 WL 3562148, at *6.

C.  Plaintiff Has Not Properly Alleged a Claim for Unreasonable Debt Collection.

Defendants argue that Plaintiff has not properly alleged a violation of the Texas common law tort of unreasonable debt collection. "Unreasonable collection is an intentional tort. But the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex.App.— Dallas 2008, no pet.) (internal citations omitted).

According to Defendants, this tort requires "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Docket no. 80 at 21 (citing *EMC Mortg. Corp*, 252 S.W.3d at 869). In her Complaint, Plaintiff asserts that unreasonable debt collection can occur where a party "engages in conduct 'that exceeds the bounds of reason or moderation.'" Docket no. 1 ¶ 143 (citing *EMC Mortg. Corp*, 252 S.W.3d at 869). But the Court in *EMC Mortg. Corp.* only applied the standard Plaintiff advocates for because the parties in that case failed to object when the trial court used that standard in the jury instructions. *EMC Mortg. Corp*, 252 S.W.3d at 869. The court was prohibited from applying the "more precise legal description[]" that Defendants cite. *Id*. Later courts have found that this tort "is intended to deter outrageous collection techniques, particularly those involving harassment or physical intimidation." *Thomas v. EMC Mortg. Corp.*, 499 Fed. Appx. 337, 343 (5th Cir. 2012). Thus, to state a claim for unreasonable debt collection one must allege conduct that is more than simply unreasonable, as Plaintiff's preferred standard would suggest.

The question, then, is whether Plaintiff alleges conduct that can be described as "outrageous." Plaintiff alleges that the Defendants authorized the Lawyer Defendants to make written threats to imprison consumers for failure to obey the Subpoena Letters. Docket no. 1 ¶ 144. Each of Plaintiff's allegations of unreasonable debt collection relate to the threats of imprisonment

17

for noncompliance with false Subpoena Letters. *Id.* ¶¶ 144–148. Defendants argue that these statements contained in the Subpoena Letters cannot amount to "willful, wanton, or malicious" conduct because they are required by Texas law. Docket no. 80 at 21 (citing TEX. R. CIV. P. 176.1 and 176.8). Although the conduct complained of perhaps skirts the FDCPA, the conduct of which Plaintiff complains does not rise to the level of "outrageous collection techniques" that this tort is intended to deter.  The conduct does not constitute "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."  Accordingly, Count Three of Plaintiff's Complaint is DISMISSED.

### D. Plaintiff's Has Alleged Facts to Support her Claim for Lack of Meaningful Attorney Involvement in Violation of the FDCPA.

Defendants next argue that Plaintiff has failed to state a claim for lack of meaningful attorney involvement. Docket no. 80 at 22–24. They assert that Plaintiff's use of "conclusory legal labels" is insufficient to state a valid claim, and that her claim fails as a matter of law because the Defendants were merely issuing post-judgment discovery. *Id.* at 22. Plaintiff responds that she has alleged sufficient facts to state a claim. She asserts "[i]n totality, Plaintiff's Complaint alleges that MCM, Asset, and Encore, as debt collectors, acted in concert by using mass-produced collection letters—in the form of the Subpoena Letter, Follow-Up Letter, Turnover Motion, and Accompanying Affidavit—under the guise of lawyers who were not actually participating in the collection process in violation of 15 U.SC. § 1692e(3)." Docket no. 93 at 18.

Plaintiff's claim may survive if the "least sophisticated consumer" would be deceived into believing that an attorney was involved in the collection of the consumer's debt. *Gonzalez*, 577 F.3d at 607. Stated another way, a violation of 15 U.S.C. § 1692e(3) exists if the Defendants' correspondence can reasonably be read to have come from an attorney, even though no attorney was involved. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008). A consumer can

reasonably assume that correspondence is from an attorney where the correspondence is printed on an attorney's letterhead and contains an attorney's signature. *See e.g.*, *Clomon v. Jackson*, 988 F.2d 1314, 1320–21 (2d. Cir. 1993). Here, the Subpoena Letter and the Turnover Motion each bear a signature line that lists six attorneys. Docket nos. 1-1, 1-2, 1-5. The Follow-up Letter purports to be from "Kristy Gabrielova, Esq., Managing Attorney, TX." Docket nos. 1-3, 1-4. The Court finds that the least sophisticated consumer could reasonably read these documents as having been sent by an attorney.

The question then becomes whether Plaintiff has alleged facts sufficient to support her claim for lack of meaningful attorney involvement. The Fifth Circuit has held that "a debt collector, who uses a mass-produced collection letter using the letterhead and facsimile signature of a lawyer who is not actually participating in the collection process, violates § 1692e(3)." *Taylor*, 103 F.3d at 1238. Plaintiff asserts that each of the Subpoena Letter, the Follow-up Letter, the Turnover Motion, and the Accompanying Affidavit were mass-produced from templates and mailed bulk-rate to Texas consumers. Docket no. 1 ¶¶ 53–55, 77, 80, 92, 101, 104, 107. Plaintiff bases her allegation, in part, on her own experience of twice responding in court to the Turnover Motion only for Defendants to fail to appear. *Id.* ¶¶ 106–107. On the same day, Plaintiff alleges, Defendants also failed to appear for hearings involving the same or similar Turnover Motion against approximately twelve other Texas consumers. *Id.* ¶¶ 106–109. Accepting this allegation as true, the Court finds that Plaintiff has alleged sufficient facts to support her claim for lack of meaningful attorney involvement.

E. <u>Plaintiff Has Sufficiently Alleged Her Claims Against Defendant Asset, But Not Against Defendant Encore.</u>

Finally, Defendants argue that Plaintiff's claim against Defendants Encore and Asset must fail because Plaintiff does not allege that either company undertook any of the alleged wrongful

actions, and because Plaintiff does not allege sufficient facts to support a finding that either company should be held vicariously liable for the actions of Defendant Midland. Docket no. 80 at 24. Plaintiff responds that Encore and Asset are directly liable for the wrongs alleged. Docket no. 93 at 21. Plaintiff also argues that even passive debt buyers can be vicariously liable for unlawful collection practices taken on their behalf. *Id.* (citing *Hordge v. First Nat'l Collection Bureau, Inc.*, Civil Action No. 4:15-CV-1695, 2018 WL 3741979, at \*4–\*5 (S.D. Tex. Aug. 7, 2018)).

The Court agrees with the Defendants that Plaintiff has failed to properly allege direct liability against Encore. Plaintiff alleges that Encore directly controlled and created the policies and procedures used by the other Defendants to collect debts from Texas consumers. *Id.* ¶¶ 72–73. The only direct allegation of wrongdoing against Encore is that it authorized the Lawyer Defendants to make written threats to consumers who did not obey legally unenforceable subpoenas. *Id.* ¶ 144. Plaintiff alleges no other wrongful conduct directly taken by Encore and asserts no facts to support the allegations it does make. The conclusory allegations in Plaintiff's Complaint that Encore "directly created . . . violative policies and procedures used by the other named Defendants that are the subject of this Complaint," *id.* ¶ 72, are not enough to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

The question becomes whether Plaintiff has sufficiently plead that Encore is vicariously liable for the conduct described in her Complaint. In order to be held vicariously liable for debt collection practices, a passive debt buyer must meet the definition of a debt collector. *See Hordge*, 2018 WL 3741979 at \*5; *McWilliams v. Advanced Recovery Sys.*, Inc., 174 F. Supp. 3d 936, 942 (S.D. Miss. 2016). The FDCPA contains two distinct definitions of a debt collector. A debt collector is (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). As discussed above, Plaintiff does not allege that Encore itself used an instrumentality of interstate commerce or the mails to collect Plaintiff's debt. Further, the Supreme Court has held that debt purchasers seeking to collect debts they own but did not create do not fall within the second definition of a 'debt collector' in the FDCPA. *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1721–22 (2017). Accordingly, on the facts alleged, Encore fits neither statutory definition and Plaintiff's claim for vicarious liability fails.

However, Plaintiff has sufficiently alleged that Defendant Asset was directly involved in the conduct underlying Plaintiff's Complaint. Plaintiff asserts that "[e]ach Defendant is a 'debt collector' within the meaning of 15 U.S.C. § 1692a(6)." Docket no. 1 ¶ 121. In particular, she asserts that "[t]he principal purpose of Asset and Encore is the collection of debts." *Id*. ¶ 40. The Subpoena Letters accompanying Plaintiff's Complaint state that the subpoenas were sent "at the request of . . . ASSET ACCEPTANCE, LLC." Docket no.1-1. The Court takes Defendant Asset at its word. The text of Subpoena Letters, when considered in tandem with the facts alleged in Plaintiff's Complaint, raise Plaintiff's claims of direct liability beyond the speculative level.

## CONCLUSION

For the reasons stated herein, Defendants' motion for judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim under 15 U.S.C. § 1692d and her claim of unreasonable debt collection are **DISMISSED** with prejudice. All of Plaintiff's claims against Defendant Encore Capital Group, Inc. are **DISMISSED** with prejudice. As it relates to Plaintiff's remaining claims, Defendants' motion is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 20th day of August, 2020.


XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE